Case 1:17-cv-10577-MLW   Document 10-1   Filed 09/28/17   Page 1 of 10

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CONSERVATION LAW FOUNDATION, INC.<br><br>Plaintiff,<br><br>v.<br><br>OX BOW MARINA, INC.<br><br>Defendant. | Case No. 1:17-cv-10577-MLW<br><br>~~Proposed~~ Consent Decree |

WHEREAS, Plaintiff Conservation Law Foundation, Inc. ("CLF") filed this action on April 4, 2017, against Defendant Ox Bow Marina, Inc. ("Ox Bow Marina" or "Defendant"), alleging violations of the Clean Water Act, 33 U.S.C. §§ 1251 *et seq.*, and seeking declaratory and injunctive relief, civil penalties, and attorneys' fees and costs;

WHEREAS, Ox Bow Marina owns and operates a marina and boat maintenance facility located at 180 Island Road, Northampton, Massachusetts 01060 (hereinafter the "Facility");

WHEREAS, CLF has alleged that the Facility discharges stormwater and process wastewater to the a waterbody designated by EPA as Oxbow (Waterbody MA34066), which flows into the Manhan River and thereafter the Connecticut River, Long Island Sound, and the Atlantic Ocean;

WHEREAS, Ox Bow Marina has engaged a qualified engineering consultant to undertake the preparations necessary to apply for a stormwater permit for the Facility;

WHEREAS, Ox Bow Marina has agreed to develop and implement a Stormwater Pollution Prevention Plan and to file a Notice of Intent to seek coverage under the 2015 Multi-Sector General Permit for Stormwater Discharges Associated with Industrial Activity for the Facility;

WHEREAS, Ox Bow Marina has agreed to prevent any discharges of process wastewater unless such discharges are covered under and in accordance with a Clean Water Act discharge permit;

1

Case 1:17-cv-10577-MLW    Document 10-1    Filed 09/22/17    Page 2 of 10

WHEREAS, CLF is a regional, nonprofit environmental organization;

WHEREAS, CLF has alleged in its complaint (the "Complaint") and in a letter dated April 4, 2017, sent to Ox Bow Marina and others, that Ox Bow Marina has violated and continues to violate Section 505 of the Federal Clean Water Act ("CWA" or "Act"), 33 U.S.C. § 1365(a); and

WHEREAS Ox Bow Marina denies CLF's allegations; and

WHEREAS, CLF and Ox Bow Marina (collectively, "the Parties" or individually "Party") agree that resolution of this matter without further litigation is in the best interest of the Parties and the public, and that entry of this Decree is the most appropriate means of resolving this action.

NOW, THEREFORE, without the trial of any issue of fact or law, without the admission by Ox Bow Marina of any of the facts or violations alleged in the Complaint, upon consent of the Parties, and upon consideration of the mutual promises contained herein,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows:

## I.    JURISDICTION AND VENUE

1.    Jurisdiction over this action is conferred by 28 U.S.C. § 1331 (federal question) and 33 U.S.C. § 1365(a) (Clean Water Act jurisdiction).   An actual, justiciable controversy exists between Plaintiff and Defendant.   The requested relief is proper under 28 U.S.C. § 2201, 28 U.S.C. § 2202 and 33 U.S.C. § 1365(a).

2.    Venue is properly vested in this Court pursuant to 33 U.S.C. § 1365(c)(1), because the alleged events giving rise to this action occurred at the Facility, located at 180 Island Road, Northampton Massachusetts 01060, which is located within this judicial district.

## II.    COMPLIANCE PROGRAM

3.    Within ninety (90) days of the date on which the Court enters this consent decree (the date on which the Court enters this consent decree is the "Effective Date"), Defendant shall obtain and maintain coverage under the United States Environmental Protection Agency ("EPA") National Pollutant Discharge Elimination System ("NPDES") 2015 Multi-Sector General Permit for Stormwater Discharges Associated with Industrial Activity ("2015 MSGP") and shall prevent all process wastewater discharges to waters of the United States unless those process water discharges are covered by and in accordance with the conditions of an individual NPDES permit. Neither the Facility nor Ox Bow Marina shall discharge pollutants to waters of the United States from the Facility except in compliance with applicable federal and state statutes, regulations and permits. Ox Bow Marina and the Facility shall comply with the Clean Water Act.

## III.    MONITORING PROGRAM

2

Case 1:17-cv-10577-MLW   Document 10-1   Filed 09/28/17   Page 3 of 10

4.      Ox Bow Marina shall monitor and sample four (4) times per year at all outfalls/discharge points discharging stormwater associated with industrial activity from the Facility for pollutants identified in the MSGP for Sector Q (i.e. *ALUMINUM, IRON, LEAD, COPPER,* and *ZINC*) commencing on the Effective Date. The inspections must be performed pursuant to the requirements of the MSGP and include, at a minimum, all areas where industrial activities are exposed to either precipitation or stormwater runoff. Ox Bow Marina will send a copy of each inspection and/or sampling result to CLF no later than twenty (20) business days after receipt.

5.      Ox Bow Marina shall also comply with all other inspection and monitoring requirements of the MSGP including, but not limited to, those of Part 3 regarding the in-house inspection of control structures and storage areas after rain events. Defendant will send a copy of each inspection and/or sampling result to CLF no later than twenty business (20) days after receipt.

6.      During the first year after the Effective Date of this Decree, Ox Bow Marina shall implement additional control measures, if any, and/or maintain control measures at the Facility as necessary to meet the benchmark levels for MSGP Sector Q (i.e. *ALUMINUM, IRON, LEAD, COPPER,* and *ZINC*). If, after the end of twelve months from the Effective Date of this Decree, Ox Bow Marina's quarterly monitoring results for any parameter exceed MSGP Part 8, Sector Q benchmark levels, Ox Bow Marina agrees to pay stipulated additional Supplemental Environmental Project payments as set forth in Paragraph 10 of this Decree. Such stipulated additional Supplemental Environmental Project payments shall be calculated based on the number of monitoring parameters exceeded during a quarterly monitoring event, not on the number of discharge locations where a monitoring parameter is exceeded (*i.e.*, an exceedance of the iron monitoring parameter at three separate discharge locations sampled during one quarterly monitoring event shall result in one stipulated additional Supplemental Environmental Project payment, rather than three). However, if after good faith implementation of these management practices, Ox Bow Marina can demonstrate that no further pollutant reductions are technologically available and economically practicable and achievable in light of best industry practice for a monitored parameter pursuant to 2015 MSGP Section 6.2.1.2, then no further Supplemental Environmental Project payments for exceedance(s) of that parameter under Paragraph 11 of this Decree shall be assessed.

7.      During the life of the Decree, CLF, through representatives, may conduct one (1) yearly site inspection at the Facility, upon three (3) business days advance written notice. The site inspection shall occur during Oxbow's normal business hours and CLF's representatives shall be accompanied by Ox Bow Marina's authorized representative during each site visit. During the site inspection, CLF representatives may collect water and soil samples, take photos at the Facility, and review Ox Bow's records and reports in order to monitor compliance with the MSGP and the Decree. Any such samples shall be split samples with one of the split samples remaining in the possession of Ox Bow Marina and one with CLF. CLF will send a copy of each sampling result to Ox Bow Marina no later than ten (10) days after receipt. CLF shall provide Ox Bow Marina with copies of all photographs taken of Ox Bow Marina during and inspection to Oxbow within ten (10) days of any inspection under this provision.  In order to contain costs and minimize the potential for adversarial postures during the site inspections, the site inspection shall be conducted by the parties' expert consultants without the physical presence of either parties' legal counsel.

3

Case 1:17-cv-10577-MLW    Document 10-1    Filed 09/28/17    Page 4 of 10

Unless otherwise agreed in writing by Ox Bow Marina, or Court Order during the term of this Decree, neither CLF nor its agents, representatives, employees, officers directors or assigns may enter the facility except pursuant to the provisions of this paragraph. To the extend CLF inspects, photograph or takes videos of Ox-Bow's operations from public property (collectively "Reports") during the term of this Decree, CLF shall provide Oxbow a copy of all such Reports within ten business (10) days of doing so.

8.    During the life of the Decree, Ox Bow Marina and CLF shall copy the other party on all documents directly related to water quality or Clean Water Act compliance at the Facility submitted to the EPA, MA DEP, or any town. Such documents shall be provided to the other party concurrently as they are sent to the agencies and/or municipalities.

## IV.    SUPPLEMENTAL ENVIRONMENTAL PROJECT

9.    Ox Bow Marina shall, within twelve months after the Effective Date of this Decree, make a Supplemental Environmental Project ("SEP") payment totaling Fifteen Thousand and No/100 Dollars ($15,000.)) to the Connecticut River Conservancy, Attn: Andrew Fisk, 15 Bank Row St., Greenfield MA 01301, for use in the Connecticut River Conservancy's programming relative to the Mahan or Mill Rivers, the "Ox-bow" into which those rivers flow in Northampton, Massachusetts, or the Connecticut River in Hampshire County, Massachusetts. Ox Bow Marina shall notify CLF in writing when each SEP payment is made and provide a copy of the check. This SEP amount shall be paid according to the following schedule:
   a.   $3,750 within three months of the Effective Date;
   b.   $3,750 within six months of the Effective Date;
   c.   $3,750 within nine months of the Effective Date;
   d.   $3,750 within twelve months of the Effective Date.

10.    For each exceedance of the MSGP benchmarks as described in Paragraph 6 of the Decree, above, Ox Bow Marina will make an additional SEP payment to the Connecticut River Conservancy in the amount of two hundred fifty and no/100 dollars for the environmental protection and restoration of, or other environmental benefit to the Connecticut River Watershed. Payment of each such additional amount shall be due fourteen (14) days following receipt of the laboratory results documenting each exceedance. Ox Bow Marina shall notify CLF in writing when each SEP payment is made and provide a copy of the check. Provided, however, that no additional SEP payment shall be due for any exceedance of an MSGP benchmark revealed within the first twelve (12) months following the Effective Date. The cumulative amount of payments under this provision shall not exceed the sum of five thousand dollars ($5,000.00).

11.    For each deadline included in this Decree which has been missed, including but not limited to failures to timely conduct quarterly benchmark monitoring and inspections pursuant to Parts 3 and 4 of the MSGP, but not including missed payment deadlines (discussed in Paragraph 14 below), Ox Bow Marina shall make an additional SEP payment to the Connecticut River Conservancy in the amount of two hundred fifty dollars ($250.00) for the environmental protection and restoration of, or other environmental benefit to the Connecticut River Watershed. Payment of each such additional amount shall be due twenty-four (24) days following each missed deadline. Ox Bow Marina shall notify CLF in writing concurrently each time a payment is made and provide a copy of each check. Pursuant to Paragraph 35, below, Ox Bow Marina

4

Case 1:17-cv-10577-MLW Document 10-1 Filed 09/28/17 Page 5 of 10

shall not be required to make such additional SEP payment for missed deadlines arising from a Force Majeure event.

12. None of the SEP payments shall be disbursed to CLF.

## V. LIQUIDATED ATTORNEY FEES AND COSTS

13. Ox Bow Marina shall pay to CLF a sum of twenty-three thousand dollars ($23,000.00).as full and complete satisfaction of CLF's claim for attorneys' fees and costs incurred in this matter and for reasonably anticipated costs to be incurred in compliance monitoring and case management during the term of this Decree, including without limitation attorney fees, expert fees, filing fees, and other costs. These liquidated fees and costs shall be paid according to the following schedule:

    a. $5,750 within three months of the Effective Date;
    b. $5,750 within six months of the Effective Date;
    c. $5,750 within nine months of the Effective Date;
    d. $5,750 within twelve months of the Effective Date.

14. In the event that any payment owed by Ox Bow Marina under the Decree is not made on or before the tenth day after the due date, Ox Bow Marina shall be deemed in default of its payment obligations under this Decree. As the result of such default on its payment obligations, in addition to a continued requirement to make said payment, Ox Bow Marina shall pay to CLF liquidated attorney fees of five hundred dollars ($500) for every thirty days that a payment is late.

## VI. EFFECT OF DECREE

15. CLF covenants not to sue and releases Ox Bow Marina (and its parent corporations, subsidiaries, officers, directors, shareholders, representatives, assigns, agents, consultants, employees, officers, and attorneys, including those who have held positions in the past) from any and all claims, causes of action, or liability under Section 505 of the Clean Water Act, 33 U.S.C. § 1365, for damages, penalties, fines, injunctive relief, past and future attorney's fees, past and future costs, or any other claim or relief (i) relating to, resulting from or alleging noncompliance with the Clean Water Act at the Facility occurring prior to the date the Court enters this Decree; (ii) for any violations that were alleged, or could have been alleged, in the Complaint; (iii) for the past conduct alleged to constitute violations in the CLF letter to Ox Bow Marina dated April 4, 2017, and (iv) for past violations alleged in any CLF correspondence to Ox Bow Marina dated prior to the date the Court enters this Decree concerning Ox Bow Marina's facility and operations. Notwithstanding anything to the contrary contained herein, CLF retains all rights necessary to enforce the terms of this Decree, including by the filing of a lawsuit.

16. Ox Bow Marina covenants not to sue and releases and discharges CLF (and its subsidiaries, officers, directors, trustees, representatives, assigns, agents, consultants, employees, officers, and attorneys, including those who have held positions in the past) from any and all claims, liability, demands, penalties, costs, and causes of action of every nature which concern or are connected with CLF's investigation of and actions regarding Ox Bow Marina.

17. Neither this Decree, nor terms thereof, nor performance of the terms thereunder

Case 1:17-cv-10577-MLW   Document 10-1   Filed 09/22/17   Page 6 of 10

by Ox Bow Marina shall constitute or be construed as an admission or acknowledgment by Ox Bow Marina of the factual or legal assertions contained in this Decree or in CLF's Complaint, and Ox Bow Marina retains the right to controvert in any subsequent proceedings, other than proceedings for the purpose of implementing or enforcing this Decree, the validity of the facts or determinations contained in this Decree or the Complaint. Neither this Decree, nor terms thereof, nor performance of the terms thereunder, shall constitute or be construed as an admission or acknowledgment by Ox Bow Marina of any liability, or an admission of violation of any law, by Ox Bow Marina or by its officers, directors, employees, agents, successors, or assigns.

18.     CLF does not, by consent to the Decree, warrant or aver in any manner that Ox Bow Marina's compliance with this Decree will constitute or result in compliance with federal or state law or regulation. Nothing in this Decree shall be construed to affect or limit in any way the obligation of Ox Bow Marina to comply with all federal, state, and local laws and regulations governing any activity required by this Decree.

## VII.   REVIEW AND TERM OF DECREE

19.     The Parties recognize that, pursuant to 33 U.S.C. § 1365(c)(3), this Consent Decree cannot be entered until forty-five (45) days after the receipt of a copy of the proposed Consent Decree by the United States Attorney General and the EPA. Therefore, after the signing of this decree by the Parties, the Parties shall jointly inform the Court of the decree, and CLF shall serve copies of this Decree upon the EPA Administrator, the Regional EPA Administrator, and the Attorney General for review, as required by 40 C.F.R. § 135.5.

20.     Upon the expiration of the forty-five-day review period provided by 33 U.S.C. § 1365(c)(3), the Parties will jointly move the Court for entry of this Decree. This Decree shall take effect on the date it is entered by this Court and shall terminate upon the following: (1) three years have passed from the Effective Date; and (2) completion of all payment obligations set forth in this Decree.

21.     If for any reason the Court should decline to approve this Decree in the form presented, the Parties agree to continue negotiations in good faith in an attempt to cure any objection raised by the Court to entry of this Decree.

## VIII.   MODIFICATION AND ENFORCEMENT OF DECREE

22.     This Decree may be modified only upon written consent of the Parties and the approval of the Court.

23.     This Court shall retain jurisdiction over this matter and allow this action to be reopened for the purpose of enabling the Parties to this Decree to apply to the Court for any further order that may be necessary to construe, carry out, enforce compliance and/or resolve any dispute regarding the terms or conditions of this Decree. If the Court does not agree to retain jurisdiction over this matter, then this Consent Decree will remain in full force and effect between the Parties, and any Party may institute a new action in the United States District Court for the District of Massachusetts concerning their respective rights and obligations under this Decree.

6

Case 1:17-cv-10577-MLW   Document 10-1   Filed 09/22/17   Page 7 of 10

## IX.   MISCELLANEOUS PROVISIONS

24.   The Parties acknowledge that he/she or it has not filed or otherwise initiated any action any court of law or equity against any other Party named in this Decree.

25.   Sections I, IV, V, VII, VIII, and IX of this Decree shall remain in effect if Ox Bow Marina ceases to be the operator of the Facility, regardless of whether the Facility continues to operate or not.

26.   All payments pursuant to this Decree shall be made in form of a business check. In the event that any business check submitted is returned due to insufficient funds, late payment penalties may apply and all subsequent payments shall be made in the form of a certified bank check.

27.   Entire Agreement. This Decree constitutes the entire agreement among the Parties concerning the subject matter hereof and supersedes all previous correspondence, communications, agreements and understandings, whether oral or written, among the Parties.

28.   Notices. Any notice, demand, copies of documents and other communications required to be made under the provisions of this Decree (collectively, "Notices") by any Party hereto shall be effective only if in writing and either (a) emailed, (b) personally served, (c) mailed by United States registered or certified mail, return receipt requested, postage prepaid, or (d) sent by a nationally recognized courier service (i.e., Federal Express) for next-day delivery, to be confirmed in writing by such courier. Notices shall be directed to the Parties at their respective addresses set forth below. Notices given in the foregoing manner shall be deemed given when (a) sent via email, (b) actually received or refused by the party to whom sent if delivered by courier, or (c) if mailed, on the day of actual delivery as shown by the addressee's registered or certified mail receipt or at the expiration of three (3) business days after the date of mailing, whichever first occurs.

Notices for Plaintiff shall be sent to:

Zachary Griefen, Esq.
Conservation Law Foundation
15 East State Street, Suite 4
Montpelier, VT 05602
zgriefen@clf.org

If sent by email, said email shall cc the address "kmckeen@clf.org."

Notices for Ox Bow Marina shall be sent to:

Ox-Bow Marina, Inc.
Island Pond Road
Northampton, MA 01060

w/copy to

7

Case 1:17-cv-10577-MLW   Document 10-1   Filed 09/28/17   Page 8 of 10

Bacon Wilson, PC
Attn: Mark A. Tanner, Esq.
57 Center Street
Northampton, MA 01060

Each Party shall promptly notify the other Party of any change in the above-listed contact information by using the procedures set forth in this paragraph.

29.     Authorization.  Each person signing this Decree represents and warrants that s/he has been duly authorized to enter into this Decree by the Party on whose behalf it is indicated that the person is signing.

30.     Successors and Assigns.  This Decree shall be binding upon and inure to the benefit of the Parties and their respective representatives, heirs, executors, administrators, successors, officers, directors, agents, attorneys, employees and permitted assigns.

31.     Interpretation.  The provisions contained herein shall not be construed in favor of or against any Party because that party or its counsel drafted this Decree, but shall be construed as if all Parties prepared this Decree, and any rules of construction to the contrary are hereby specifically waived. The terms of this Decree were negotiated at arm's length by the Parties hereto.

32.     Headings.  The section and paragraph headings contained in this Decree are for reference purposes only and shall not affect in any way the meaning or interpretation of this Decree.

33.     Counterparts.  Facsimile, electronic and scanned signatures shall be deemed to be originals for all purposes. Copies of the original Agreement, whether transmitted by facsimile or other means, shall be effective. This Agreement may be signed in separate counterparts, each of which when so executed and delivered shall be deemed an original and all of which taken together constitute but one and the same instrument.

34.     Severability.  In the event that any of the provisions of this Decree are held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

35.     Force Majeure.  For purposes of this Decree, a "Force Majeure event" is defined as any event arising from causes beyond the control of Defendant, including its contractors and subcontractors, that delays or prevents the timely performance of any obligation under this Decree, except for obligations as provided in Paragraphs 9 and 13 of this Decree, notwithstanding Defendant's best efforts to avoid the delay. The deadline for the responsibility to perform any action under this Decree may be extended for up to the number of days of nonperformance caused by the Force Majeure event, provided that Defendant complies with the notice requirements of this paragraph. Examples of events which may constitute Force Majeure events include severe weather events, natural disasters, and national, state or regional emergencies. Examples of events that are not Force Majeure events include, but are not limited to, normal inclement weather, unanticipated or increased costs or expenses of work, Defendant's financial difficulty in

8

Case 1:17-cv-10577-MLW   Document 10-1   Filed 09/28/17   Page 9 of 10

performing such work and acts or omissions attributable to Defendant's contractors or representatives.

If any event occurs which may delay or prevent the performance of any obligation under this Decree, caused by a Force Majeure event, Defendant shall notify CLF, at the address specified in Paragraph 28 above, within three (3) business days after Defendant first knows, or should know, that the event might cause a delay. This written notice to CLF shall include, without limitation: (i) an explanation of the causes of any actual or expected delay or noncompliance; (ii) the anticipated duration of delay; (iii) the measures taken and to be taken by Defendant to prevent or minimize the delay or nonperformance; (iv) a proposed schedule for the implementation of such measures; and (v) a statement as to whether in the opinion of Defendant the Facility can continue to operate in a manner which will not violate this Decree.

If CLF agrees that a delay or anticipated delay in performance is attributable to Force Majeure, the time for performance of the obligations under this Decree that are affected by the Force Majeure event shall be extended for the period of time reasonably necessary to allow performance of the obligation to the extent the delay was caused by a Force Majeure event.

CONSERVATION LAW FOUNDATION, INC.

By: _____ Date: 7/28/17

Christopher M. Kilian, Vice President
Conservation Law Foundation
15 East State Street, Suite 4
Montpelier, VT 05602


OX BOW MARINA, INC.

By: _____ Date: 7-28-17

Mathias H. Duda, President
Ox-Bow Marina, Inc.
Island Pond Road
Northampton, MA 01060


ENTERED and DATED this 2nd day of Nov., 2017

_____

Honorable MARK L. WOLF
United States District Judge

10